## STEINREICH v. COCA-COLA CO.

### Patent Appeal No. 3182.

Court of Customs and Patent Appeals.
Dec. 4, 1933.

Herbert J. Jacobi and William J. Jacobi, both of Washington, D. C., for appellant.

Harold Hirsch, Marion Smith, and Frank Troutman, all of Atlanta, Ga., and Thomas L. Mead, Jr., of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Commissioner of Patents, affirming a decision of the Examiner of Interferences, sustaining a notice of opposition of appellee, and holding that appellant, whose application was filed on July 15, 1929, was not entitled to the registration of the mark "Vera-Coca" for use upon a noncereal, nonalcoholic, maltless beverage, sold as a soft drink.

In its notice of opposition appellee alleged prior adoption and use, through its predecessor, continuously since about 1886, of the mark "Coca-Cola" upon a nonalcoholic beverage and syrup for making it, and claimed ownership of said mark and registration of the same in the United States Patent Office. It further alleged that the mark of appellant was applied to goods of the same descriptive properties as the mark of appellee, that the marks are confusingly similar, and that the registration of appellant's mark would be injurious to appellee.

The answer of appellant to said notice of opposition denied that there was confusing similarity in the marks of the parties.

Both parties took testimony. Both tribunals of the Patent Office found that the marks involved were confusingly similar, and sustained the opposition of appellee.

The Commissioner of Patents held that the goods to which the respective marks are applied are substantially identical in class and descriptive properties, and that appellee had used its mark for forty years before appellant entered the field, had expended large sums in advertising its goods under its mark, and had sold such goods in very great quantities throughout the United States. In view of these facts, which are undisputed in the record, the Commissioner further held that the question to be determined was confined to a comparison of the marks. Upon this question the Commissioner said:

"Both marks include the word 'Coca'; the applicant places the notation 'Vera' before the word and the opposer places the word 'Cola' after the common word, and both parties separate their words by a hyphen. It is at least reasonable to suppose that customers in ordering goods of this kind might abbreviate the entire name or notation and if this were done the goods of the opposer and those of the applicant might well be called for by the word 'Coca.' At any rate the goods are of the character to be ordered carelessly without much thought or consideration and it is deemed at least probable there would be some confusion of goods as well as of origin. Those familiar with the opposer's trade-mark and goods might be led to think, even if the difference in the trade-marks were noted, that the applicant's goods had their origin with the opposer; and that the latter was putting out a new kind of beverage. It is considered the applicant has approached too nearly opposer's trade-mark and should have, from the practically unlimited field before him, selected a mark as to which there could be no question of confusion.

"The decision of the examiner of trade-mark interferences sustaining the opposition and adjudging the applicant not entitled to the registration for which he has applied is affirmed."

We are in entire agreement with the foregoing conclusion of the Commissioner. Appellant challenges the statement of the Commissioner that the goods upon which the marks are applied are of the character to be ordered carelessly, without much thought or consideration.

The goods to which the marks of both parties are applied include syrups which are sold to proprietors of soda fountains and like dispensaries, and the drink of which such syrup is an ingredient is sold to the public. While it is no doubt true that dealers would not carelessly order the goods, the purchaser of such drinks at the soda fountain would not be apt to exercise care and precision in giving his order. As was said by the Circuit Court of Appeals, Sixth Circuit, in the case of Federal Trade Commission v. Good-Grape Co., 45 F.(2d) 70, 72, with respect to a soft drink of a different character: "* * * The average purchaser makes for himself only a casual if any examination of the real character of this five-cent drink. * * *"

We are also in agreement with the Commissioner that customers, in ordering goods of the kind here involved, might abbreviate the entire name or notation, and that, if this were done, the goods of appellant and appellee might well be called for by the word "Coca." Testimony introduced by appellant is to the effect that customers at soda fountains often order appellee's product "Coca-Cola" by ordering a "small coke" or a "large coke."

The testimony with respect to the adoption of the mark "Vera-Coca" by appellant supports our conclusion that the Commissioner committed no error in sustaining the opposition of appellee.

According to the testimony of appellant, he did not originate the name "Vera-Coca," but commenced to use it through one Harry J. Tober. His testimony upon this point is as follows:

"Q. Mr. Steinreich, did you originate the name Vera-Coca? A. Not me.

"Q. Who did? A. I don't know.

"Q. How did you happen to commence the use of the name? A. Through this fellow Tober.

"Q. Would you mind explaining how that came about? A. To be in a position where you want to tell something that is worth while —he just came into my office and used the telephone, and a little bottle dropped out of a package. I said: 'What have you got there?' 'I've got something that's worth while.' Then he told me what it was. He showed me a little book with the name Vera-Coca, and thinking it might be worth while I says: 'O. K., it's a go with me.' Now, here's where the trouble started. He told me the name Vera-Coca was registered in Washington and I found out differently."

Appellant now claims that in April, 1929, after the visit of the said Tober, he (appellant) appropriated the mark "Vera-Coca" with the consent of said Tober, and thereupon, under the name of the Vera-Coca Company, proceeded to sell goods of the kind here involved, applying thereto the mark "Vera-Coca."

The booklet to which appellant apparently referred in his testimony above quoted was offered in evidence, and it appears in the record. The first page following the title page contains the following:

"The History of

Vera-Coca and Coca-Cola

By the woman who first owned Coca-Cola

Mrs. Diva Brown

Proprietor of the Vera-Coca Co.

314 East Bay Street

Savannah, Ga.

The Price of a Name

The purpose of this book is to convince you that Coca-Cola and Vera-Coca are made from one and the same formula.

With the sworn testimony of Judge John S. Candler—printed on the next page—it cannot fail in its purpose.

In these pages you will learn that truth is stronger than fiction.

Get these facts: Judge Candler, attorney for the Coca-Cola Company, and a former Associate Justice of the Supreme Court of Georgia on his oath in the United States Court at Chattanooga — declares that there is no change today from Dr. Pemberton's original formula in making Coca-Cola. And Mrs. Diva Brown offers incontrovertible evidence of the possession of Dr. Pemberton's original Coca-Cola formula from which she today manufactures Vera-Coca.

The difference in the price you pay for Coca-Cola and the price you pay for Vera-Coca is the Price of a Name."

As hereinbefore stated, appellant claims now that he appropriated the mark "Vera-Coca" in April, 1929. He lays no claim to deriving title to the mark through Tober or through the author of the booklet above referred to.

Assuming, without deciding, that any prior use of the mark "Vera-Coca" had been abandoned, and that appellant independently appropriated the same in April, 1929, it is too clear for argument that he did so in the hope and expectation that he would profit by the similarity of the marks "Vera-Coca" and "Coca-Cola," for he was aware of the extent to which the original users of the mark "Vera-Coca" had associated the marks "Vera-Coca" and "Coca-Cola" and the products to which they were applied, in offering their product to the public.

In the case of Coca-Cola Co. v. Old Dominion Beverage Corporation, 271 F. 600, 604, before the Circuit Court of Appeals, Fourth Circuit, there was involved, among other things, the question of the confusing similarity between the trade-mark "Coca-Cola" and the mark "Taka-Kola," both marks being applied to beverages. The court in its opinion said: "By using the words 'Taka-Kola,' and by imitating the ornamentation of the crowns of plaintiff's bottles, defendant has unfairly competed and is still doing so; but has it not also infringed upon plaintiff's exclusive right to the use of its federally registered trade-mark? A trade-mark is property of a limited and qualified kind, it is true. It cannot exist apart from the business with which it is connected, nor in jurisdictions into which that business has not gone, leaving on one side the possible effect of state or federal registration. But it is property still within the somewhat restricted limits thus imposed upon its owner's rights. It would seem to follow, as we think it does, that it is entitled to protection against the attempt of a competitor to use it to push his wares to the possible and probable damage of the owner. Plaintiff's rights are limited at the most to two words. All the rest of infinity is open to defendant. It will be safe if it puts behind it the temptation to use in any fashion that which belongs to the plaintiff. It has not done so voluntarily, and compulsion must be applied."

We think that the mark "Vera-Coca" is equally susceptible of the observations above quoted with respect to the mark "Taka-Kola."

Had appellant wished clearly to indicate the origin of his goods, there were many thousands of words which he might have selected as a trade-mark for his product, or he could have coined a word or words, none of which could be open to the claim of similarity to appellee's mark. He did not see fit to do so, and, in view of the facts above recited, the conclusion is irresistible that he hoped and expected, by using the mark "Vera-Coca," that he would profit by the similarity of his mark to the mark "Coca-Cola."

This motive being clear from the record before us, we have little patience with any claim now made by appellant that confusion in the use of the two marks would not result. Lever Brothers Co. v. Riodela Chemical Co., 41 F.(2d) 408, 17 C. C. P. A. 1272; Procter & Gamble Co. v. J. L. Prescott Co., 49 F.(2d) 959, 18 C. C. P. A. 1433; Celotex Co. v. Bronston Bros. & Co., Inc., 49 F.(2d) 1048, 18 C. C. P. A. 1490.

Appellant relies largely upon the case of Coca-Cola Co. v. Carlisle Bottling Works, 43 F.(2d) 101, decided by the District Court for the Eastern District of Kentucky, affirmed by the Circuit Court of Appeals, Sixth Circuit, 43 F.(2d) 119, wherein it was held that the mark "Roxa-Kola" did not infringe upon appellee's mark "Coca-Cola."

We have examined the opinions in that case and do not find it necessary to express either approval or disapproval of the conclusion there reached. It is sufficient to say that under the facts in the case at bar, which differ in material respects from the facts in the case last cited, we are satisfied that there was no error in sustaining the opposition of appellee and denying appellant's application for registration.

Appellee contends that, even though it should be held that the marks of the respective parties are not confusingly similar, the record shows that at the time appellant applied for registration he was not the owner of the mark "Vera-Coca." We find it unnecessary to consider this question in view of the conclusion we have reached as to the similarity of the marks of the parties.

The decision of the Commissioner of Patents is affirmed.

Affirmed.

GARRETT, Associate Judge (specially concurring).

I am in agreement with the majority holding that registration of appellant's mark must be denied because of the near resemblance of the marks. When applied to identical goods, or goods of the same descriptive properties, I think undoubtedly appellant's mark would "be likely to cause confusion or mistake in the

mind of the public or to deceive purchasers," and so I regard it as falling within the inhibition proclaimed in section 5 of the act commonly referred to as the Trade-Mark Registration Act of February 20, 1905 (15 US CA § 85). It is not, in my opinion, necessary to consider the inferred motive of appellant-applicant in deciding the case, and, for the reasons stated in my specially concurring opinion in the case of Lever Brothers Co. v. Riodela Chemical Co., 41 F.(2d) 408, 17 C. C. P. A. 1272, I am unwilling so to do in the instant case. That matter was not considered by the tribunals of the Patent Office, and hence is not referred to in appellant's reasons for appeal.