## COCA-COLA CO. v. LOS ANGELES BREWING CO. et al.
### No. 427—M.

District Court, S. D. California, Central Division.

Nov. 6, 1939.

68

Edward S. Rogers, of Chicago, Ill., Frank Troutman (of Spalding, Sibley, Troutman & Brock), of Atlanta, Ga., and Earle M. Daniels, of Los Angeles, Cal., for plaintiff.

Albert J. Fihe, of Chicago, Ill., for defendants.

McCORMICK, District Judge.

■ The court believes that these matters are admittedly in the sound discretion of the court, to be exercised judicially and not arbitrarily. There is, however, a fixed principle in patent law and I dare say it is applicable in trade-mark litigation as well. It has been applied in many cases by this court. It operates where there isn't anything to be gained by prolonging litigation except to afford one or the other of the litigants a respite and moratorium to suspend the enforcement of rights; but that is no safe criterion in determining the course that the court should follow on an application for a preliminary injunction. It usually applies in patent litigation where there has been a prior adjudication validating a patent and the only question at issue is one of infringement. There the situation can be arrived at generally, except in so far as the question of infringement is concerned, just as securely and much more satisfactorily on the preliminary application as it can by a trial after a long hearing, expensive both as to time and as to money.

■ What is there here that can be modified or changed or that needs any further exploration? What factual situation is there that could be any more definitely presented to the court in January than today? I think there is nothing. There may be many more affidavits filed on each side of the question. There may be a great deal of oral testimony developed on both sides of the issue. There may be extensive arguments made as to the effect of those matters but, upon analysis, the same issue will be presented. If that is the case, it should be determined summarily.

■ It seems to me that the arguments of the respondents put aside the adjudications of the Supreme Court of the United States, particularly in this case of Coca-Cola Company v. Koke Company, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189, by Justice Holmes, as read by counsel this morning. Here we have the protective right adjudicated and adjudicated by the court of last resort in the country, and adjudicated in 1920. The cases are filled with subsequent determinations of the valuable right of the use of this name "Coca Cola." We have had many of them in this court and the Federal Reporters are replete with other instances where the right has been considered and uniformly adjudicated. It isn't necessary to resort to the law books to determine that the use of this name "Coca Cola" is a valuable property right, and I think the courts are entitled, under

the case of Arizona v. California, 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154, and other decisions, to use their own faculties when a question of such general recognition is presented before them. So that the right to use the words "Coca Cola" and the protective registration of those words is something beyond any question at this late date.

As a result of that protection, there has developed something that is perhaps as valuable as the article or the name itself and that is the goodwill that attends the property right.

The evidence before the court shows, and I think it shows it without conflict, (although there are two of the affiants who, perhaps after some thought or maybe importunity, have modified their previous affidavits, but have not modified them in any material respect) that the use of the word "coke" is a general indication and suggestion that the customer desires Coca Cola. It is ridiculous to argue to the contrary under the evidence that is shown here and under what I think all of us know to be the fact. There are affidavits here by persons of professional pursuit, some of them lawyers who are meticulous in their description of what they want, whose minds are hypercritical, whose business it is to become critical. But they are not criteria in a situation of that kind as much as the ordinary individual, particularly the youthful individual. I think it is common knowledge that the tendency of the modern American youth to abbreviate indicates clearly that, when he calls for "coke" in a refreshment stand, he wants Coca Cola. There can't be any question about that, seriously. There may be fine-spun arguments for the purpose of dispossessing a property right but as far as substance is concerned there can not be any real question honestly asserted in a court of equity.

I think Judge Denison here in the case of Nashville Syrup Company v. Coca Cola Company, 215 F. 527, Ann.Cas.1915B, 358, in the Sixth Circuit, has made some expressions which are pertinent to the motion before the court. This also pertains to the beverage and to the product and to the name that is in question here in this case. He said, on page 533 of 215 F., the following: "We conclude that the name Coca Cola as applied to plaintiff's product, while undoubtedly suggestive, is not so substantially and really deceptive as to invalidate the registered mark."

There was a question raised there which was somewhat aside from the question here and similar to the one discussed by Judge Ross of the Circuit Court of Appeals of the Ninth Circuit, Koke Co. of America v. Coca-Cola Co., 255 F. 894, Judge Denison continues, on behalf of the unanimous court in this case, as follows: "Closely connected with what has been said, but separately urged by defendant, is the claim that because in compounding its product defendant has used coca leaves in considerable quantity and has used real cola nuts to furnish the caffeine, it must be permitted to call its article 'Coca Cola.' This is really another aspect of the matter already decided. If the name is not so substantially and definitely descriptive (rather than suggestive) as to be deceitful if employed where the supposed description is not true, it follows that the name is not so merely descriptive that its use remains of common right after public acquiescence for 20 years in plaintiff's exclusive appropriation. Analogy is found in the illustration above quoted from counsel. Assuming that 'Grape Nuts' had been exclusively used for a long period as the distinct name of a particular maker's compound food, could a newcomer rightfully take away a part of the established trade by using the same name for his new compound, just because it contained some nuts and was flavored with grape juice? To us, a negative answer seems imperative, and no less so in the instant case."

There is the principle, I think, that should govern us in the decision here. If we ask ourselves, "Why has the Los Angeles Brewing Company made use of the word 'coke' on its beverage?" there can be only one answer, truthfully, and that is that a tremendous good will has been built up by the complainant in this case by that term. The public have used it synonymously with "Coca Cola." A boy or girl, and perhaps a man or woman, who goes into an establishment to get a drink of Coca Cola, will in many instances ask the dispenser for a coke and the dispenser in nine cases out of ten will give them a Coca Cola. There are some instances adverted to in these affidavits that indicate to the contrary but I think in nine cases out of ten they will be served with Coca Cola. It seems to me that to permit that sort of practice would divest the complainants of perhaps one of the most valuable

elements of their property right and it would be unconscionable, it seems to me, to do so. It would be lending the weight of a court of equity to a deceptive matter. It would be irreparably injurious to the complainant.

■ It is said that these matters can be properly covered by damages. I am not sure that they could be properly covered by damages. The beverage of the Los Angeles Brewing Company may be more potable. It may be a more popular beverage and it is popularized upon the nickname of Coca Cola. That is the very thing that the court is asked to prohibit. It seems to me there is no escape, when it comes to measuring the equities, as the court has already said, that the possibility of a change in the factual situation between now and the time of a hearing on the merits is out of the question entirely. Either the court is right in deciding this question now or it never will be in position to decide it. It seems to me that in the interests of both sides of the case it should be decided now.

The question of injury sometimes is weighed in applications in preliminary injunction cases and trade-mark cases. The question is which will operate to cause the greatest injury. I think that question answers itself. Here is a product that is generally known, nation-wide. No one mistakes the product. Coca Cola has a definite, fixed meaning, which has grown up after many years of exploitation and publicity. On the other hand, the use of this word "coke" by the Los Angeles Brewing Company has been only within the last two years, I believe, or about 18 months. They had notice as early as November of 1938 that the complainants contended that the use of that name was an infringement of their property right and yet they saw fit to go forward and make these expenditures. It seems to me that under that situation there isn't much equity on their side in coming into court now and asking that the matter be deferred because there may be some adjustment of damages.

I think the injunction, however, should extend only to the use of that word "coke." I don't believe there is anything else that the court should at this time undertake to prohibit or inhibit.

An injunction will issue accordingly restraining the use or sale or advertisement of a beverage of this type or any beverage for human consumption using the word "coke."